IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CLAUDE THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>DELAWARE TECHNICAL AND COMMUNITY COLLEGE; JODY HUBER, individually and in her official capacity as Department Chair at Delaware Technical and Community College; ELIZABETH O. GROLLER, in her official capacity as Director of Title IX and Civil Rights Compliance at Delaware Technical and Community College,<br><br>Defendants. | Civil Action No. 24-762-CFC |

## MEMORANDUM ORDER

Pending before me is pro se Plaintiff Claude Thomas's Motion for Reconsideration of Order Denying Assistance in Obtaining Counsel. D.I. 95. Thomas asks that I reconsider my Order dated October 20, 2025, denying his motion to appoint counsel. D.I. 95 at 1; *see generally* D.I. 94.

"A proper [motion for reconsideration] . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new

evidence; or (3) the need to correct [a] clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). "[I]n no instance," however, "should reconsideration be granted if it would not result in amendment of an order." *Intell. Ventures I LLC v. Check Point Software Techs. Ltd.*, 215 F. Supp. 3d 314, 321 (D. Del. 2014); *see also Schering Corp. v. Amgen*, 25 F. Supp. 2d 293, 295 (D. Del. 1998).

Thomas argues that "[r]econsideration is warranted to correct a clear error of law and prevent manifest justice because the Order analyzed [his] request [for counsel] through an indigency lens, while [Thomas] invoked Title VII's distinct appointment authority, 42 U.S.C. § 2000e-5(f)(1), which does not impose indigency as a prerequisite and requires a factor-based, discretionary analysis." D.I. 95 at 1. I made clear in the Order, however, that although Thomas's averment that he was able and willing to pay for an attorney was fatal to his request, I denied the request *both* because of that averment *and* because Thomas has demonstrated through his prolific filings—forty-nine to date—that he is more than capable of presenting his case. D.I. 94 at 2. (Thomas himself touts his "procedural sophistication" in another motion pending before me. *See* D.I. 79 at 6.) That reasoning is entirely consistent with what Thomas calls the "factor-based,

discretionary analysis" courts employ when addressing requests for counsel made pursuant to § 2000e-5(f)(1).

"[T]he financial means of [the] plaintiff is one of several factors guiding the trial judge's exercise of discretion in appointing counsel under section [2000e-5(f)(1)]." *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 969 (3d Cir. 1978). And "[i]f a court finds that a plaintiff *can* afford to hire counsel, this *ordinarily will be a dispositive ground* for denying the request for appointment" under § 2000e-5(f)(1). *Poindexter v. FBI*, 737 F.2d 1173, 1186 (D.C. Cir. 1984) (second emphasis added); *see also Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1421 (10th Cir. 1992) (holding that "[b]efore counsel may be appointed [under § 2000e-5(f)(1)], a plaintiff *must* make [an] affirmative showing[] of . . . financial inability to pay for counsel") (emphasis added); *Gonzalez v. Carlin*, 907 F.2d 573, 580 (5th Cir. 1990) (affirming the district court's denial of the plaintiff's request for counsel in part because the plaintiff was employed and had a "steady stream of income"); *Jenkins v. Chem. Bank*, 721 F.2d 876, 880 (2d Cir. 1983) (holding that "[a] court should assess a plaintiff's ability to afford a private attorney" in deciding whether to grant a request for counsel under § 2000e-5(f)(1)).

The Third Circuit did not identify in *Hicks* any factors other than the plaintiff's financial means that should guide a district court in deciding whether to grant a request for counsel under § 2000e-5(f)(1). *See* 572 F.2d at 969. But in two

nonprecedential opinions, panels of the Third Circuit cited with approval the test adopted by the D.C. Circuit in *Poindexter* for addressing § 2000e-5(f)(1) requests for counsel. *See Walley v. Amazon.com, Inc.*, 2024 WL 2861847, at *2 n.1 (3d Cir. June 6, 2024) (citing *Ficken v. Alvarez*, 146 F.3d 978 (D.C. Cir. 1998) for its summary of the *Poindexter* test); *Mentor v. Hillside Bd. of Educ.*, 428 Fed. App'x 221, 223–24 (3d Cir. 2011) (same). That test requires courts to consider: (1) the plaintiff's ability to afford an attorney; (2) the plaintiff's capacity to present the case adequately himself; (3) the merits of the plaintiff's case; and (4) the efforts of the plaintiff to secure counsel. *Poindexter*, 737 F.2d at 1185.

I expressly considered the first two factors in the Order. I did not expressly address the third and fourth factors, as the first two factors are, in my view, dispositive. But I will discuss those factors here so that the record is complete.

Turning first to the merits of Thomas's allegations: There appear to be none—which would explain why the significant efforts Thomas says he has made to obtain counsel have been unsuccessful. Thomas has not alleged, let alone offered evidence to show, that he suffered an adverse employment action sufficient to state a prima facie case of discrimination. In his opposition to Defendants' motion for summary judgment, Thomas identifies the following as potential adverse employment actions: exclusion from meetings, arbitrary deadlines, "constructive transfer," and false Title IX complaints against him. *See* D.I. 76 at 9.

4

Exclusion from meetings, arbitrary deadlines, or Title IX complaints, by themselves, bear no resemblance to the kinds of adverse employment actions courts have recognized for discrimination claims (such as refusing to hire, refusing to promote, and firing). *See Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (explaining that Title VII only provides a remedy for discrimination "that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment") (internal quotation marks and citation omitted); *see also Walker v. Centocor Ortho Biotech, Inc.*, 558 Fed. App'x 216, 219 (3d Cir. 2014) (collecting cases). And to my knowledge no court has recognized "constructive transfer" as an adverse employment action. *Cf. Brown v. Potter*, 516 Fed. App'x 563, 565 (6th Cir. 2013) (declining to find an adverse employment action where the plaintiff "transferred . . . voluntarily, and [where] . . . [h]er new position . . . was substantially the same as her old one, offering the same duties, pay and benefits and differing only in the grade level at which [her employer] ranked it").

Thomas also has not alleged, let alone offered evidence to show, that he suffered an adverse action sufficient to state a prima facie case of retaliation. Thomas claims in his opposition to Defendants' motion for summary judgment that Defendants retaliated against him by filing a false Title IX complaint against him, conducting a "biased" investigation into his own complaint, "further damaging

5

[his] reputation, and "creating additional hostile work environment." D.I. 76 at 12. The latter two allegations are far too general to support a meritorious claim of retaliation. And there is no evidence that either the Title IX complaint against Thomas or the investigation into Thomas's own complaint was "materially adverse" to him. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding that to state a retaliation claim a plaintiff must have suffered a "materially adverse" action). On the contrary, the investigation into the complaint against Thomas appears to have been handled in the exact same manner as the investigation into the complaint Thomas brought against the person who filed the complaint against him, and both complaints were ultimately dismissed at the same time once it was determined that there was insufficient evidence to support them. *See* D.I. 69 at A57–A59.

Thomas's harassment claims are similarly weak. Even if I accept as true the description of Defendants' conduct Thomas offered at his deposition, *see* D.I. 69 at A60–A96 (testifying that Defendants excluded him from meetings, gave him unreasonable deadlines, and no longer greeted him in the manner they used to), his testimony in no way shows that he was subjected to sufficiently severe or pervasive conduct to state a prima facie case of harassment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (setting forth the standard for what constitutes severe or pervasive harassment).

In light of the minimal prospect of success on the merits of Thomas's claims, any benefit that he could derive from the appointment of counsel would be outweighed by the burdens that appointment would impose on the Court and Defendants (who have already had to contend with Thomas's forty-nine pro se filings to date), not to mention the appointed attorney who would suffer a hardship to litigate those claims. Thus, the lack of apparent merit to Thomas's claims makes for an even stronger case against the appointment of counsel than I outlined in the Order.

With respect to the fourth *Poindexter* factor—the efforts of the plaintiff to secure counsel—I accept as true Thomas's assertions that he has worked diligently to find a lawyer, and thus this factor weighs in his favor. *See* 737 F.2d at 1188; D.I. 45 at 2, 4–5. On the other hand, as I noted above, the refusal of numerous lawyers to represent Thomas in this matter is consistent with my finding with regards to the merits of his claims. To borrow from then-Judge Scalia in his concurring-in-part and dissenting-in-part opinion in *Poindexter*, Thomas's "main problem seem[s] to be the legal unattractiveness of his case." *See* 737 F.2d at 1193 (Scalia, J., concurring in part and dissenting in part).

To sum up: Arguably three of the *Poindexter* factors considered individually are fatal to Thomas's request for appointed counsel. But in any event, those factors considered in the aggregate weigh heavily against the appointment of counsel in

this case, notwithstanding Thomas's diligence in trying to obtain counsel. My Order therefore created no need to correct a clear error of law or fact or to prevent manifest injustice.

NOW THEREFORE, at Wilmington on this Sixth day of November in 2025, it is HEREBY ORDERED that Plaintiff's Motion for Reconsideration of Order Denying Assistance in Obtaining Counsel (D.I. 95) is DENIED.

_____
CHIEF JUDGE