IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CLAUDE THOMAS,

Plaintiff,

v.

Civil Action No. 24-762-CFC

DELAWARE TECHNICAL AND COMMUNITY COLLEGE; JODY HUBER, individually and in her official capacity as Department Chair at Delaware Technical and Community College; ELIZABETH O. GROLLER, individually and in her official capacity as Director of Title IX and Civil Rights Compliance at Delaware Technical and Community College,

Defendants.

---

Claude Thomas, Bear, Delaware, *Pro Se*

Lauren E.M. Russell and Elizabeth S. Dean, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware

*Counsel for Defendants*

**MEMORANDUM OPINION**

September 8, 2026
Wilmington, Delaware

COLM F. CONNOLLY
CHIEF JUDGE

This case arises out of pro se Plaintiff Claude Thomas's employment as an instructor at the Stanton Campus of Defendant Delaware Technical and Community College (Del Tech). Thomas brought retaliation, hostile work environment, and discrimination claims pursuant to Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1983 against Defendants Del Tech, Jody Huber (individually and in her official capacity as Chair of Del Tech's Stanton Criminal Justice Department), and Elizabeth O. Groller (individually and in her official capacity as Del Tech's Director of Title IX). D.I. 135. Pending before me is Defendants' Motion for Summary Judgment. D.I. 66.

## I. BACKGROUND

Thomas, a black man, began working as an instructor in Del Tech's Stanton Criminal Justice Department (the Department) in August 2017. D.I. 69 at A52, A68. Huber is Thomas's colleague in the Department and has worked as an instructor at Del Tech since 2015. *See* D.I. 69 at A98. In September 2021, both Thomas and Huber applied to replace the outgoing Department Chair. *See* D.I. 69 at A37; D.I. 127-1 at 36. Del Tech selected Huber for the role. D.I. 69 at A1, A37; D.I. 127-1 at 36. Thomas and Huber's relationship quickly soured.

Thomas testified in his deposition for this matter that Huber, upon becoming Department Chair, excluded him from informal meetings, D.I. 69 at A77,[1] implied to substitute teachers that he did not perform his job well, D.I. 69 at A78, disparaged him to others, D.I. 69 at A83, gave him "arbitrar[y]" deadlines, D.I. 69 at A86, and "no longer greeted [him] in the same manner that she used to," D.I. 69 at A82.

On February 1, 2023, Thomas emailed Vice President and Director of the Stanton Campus Daniel R. Ehmann to request a transfer from the Criminal Justice Department to the Social Sciences Department. D.I. 69 at A15. Thomas did not disclose in his email why he wanted to transfer. *See* D.I. 69 at A15. Ehmann approved Thomas's request a few days later, D.I. 69 at A15, and the transfer became effective May 1, 2023, D.I. 69 at A18.

On April 18, 2023, Thomas sent an email to Vice President for Academic Affairs Justina M. Thomas with the subject line "Stanton's Campus Criminal Justice Department Management." D.I. 69 at A20–A21; D.I. 127-1 at 3. In the email, Thomas wrote in relevant part that:

> [T]he current leadership at Stanton's Criminal Justice department ostensibly lacks . . . these tenets [of meeting students where they are and making students feel

[1] Defendants cite evidence that suggests that Thomas was included in formal, scheduled Department meetings. *See* D.I. 69 at A2–A14. Thomas does not dispute that he was included, and attended, those meetings. *See* D.I. 69 at A85.

> welcome] along with questionable dimensions of empathy, sympathy, and respectability, particularly given an appearance of intentionally or unintentionally being differential toward marginalized student populations. Such is abundantly evident when a leader in the Criminal Justice department utters an egregious racially derogatory trope toward an African American student in front of many others in an effort to dissuade and discourage the student from pursuing a specific career path.

D.I. 69 at A21; D.I. 127-1 at 3. Vice President Thomas replied that she was "required to report [Thomas's email] to the College's Title IX coordinator, Elizabeth Groller," because it "include[d] allegations of discrimination." D.I. 69 at A20; D.I. 127-1 at 5. Thomas met with Groller shortly thereafter on May 4 to discuss his concerns but declined to file a formal complaint. *See* D.I. 69 at A23, A29.

On August 10, Thomas confronted Huber directly about his concern that she had counseled a black student away from a career in criminal justice. *See* D.I. 69 at A27–A28. Later that day, Huber emailed Thomas "to follow-up on [the] conversation." D.I. 69 at A27–A28. Thomas replied on August 13 that "several students of color have expressed concerns" about Huber's "perceived racial and ethnic animus." D.I. 69 at A26. He continued that "[b]ased on [his] observations of [Huber's] behaviors and mannerisms . . . [he] c[ould] comprehend the sentiments expressed by the students" and "fe[lt] it necessary to bring these concerns to [her] attention." D.I. 69 at A26. That evening, Huber replied, saying

that "[b]ased on the content of [Thomas's] email [she] [was] referring [him] to the Title IX coordinator." D.I. 69 at A25–A26. Thomas replied the next day that "[t]he email was meant as constructive criticism" and that he had "no desire or need to discuss [the] matter further." D.I. 69 at A25. Groller reached out to Thomas on August 25 to schedule a meeting to discuss his concerns about Huber. D.I. 69 at A29.

On September 21, Stanton's Assistant Dean of Instruction Margie McKeeman filed a Title IX complaint against Thomas on behalf of Huber, after Huber had shared that she felt she was being harassed by Thomas. *See* D.I. 69 at A30. Huber testified that she wanted Thomas "to stop sending [her] emails with allegations of discrimination" because, in her words, the "repeated hostile nasty emails . . . offered [her] no actual constructive criticism for growth." D.I. 127-1 at 41–42.

On October 3, Groller informed Thomas via email that she had "received a report from . . . Huber in which she allege[d] she ha[d] been experiencing a hostile working environment because [Thomas] [had] discriminated against her on the basis of her gender." D.I. 69 at A31. Two days later, on October 5, Thomas filed his own Title IX complaint. D.I. 69 at A34–A35, A46; D.I. 127-1 at 7–8. Thomas alleged in that complaint that Huber subjected him to "disparaging and indifferent treatment" and that Huber had filed her "completely bogus" complaint in

retaliation for Thomas's email to Vice President Thomas. D.I. 69 at A34; D.I. 127-1 at 7.

Del Tech investigated both complaints. *See* D.I. 69 at A31, A36–A51, A55–A59; D.I. 127-1 at 26, 28, 35–36. On January 4, 2024, Groller sent Thomas and Huber the investigative report her office had prepared in response to Huber's complaint against Thomas, D.I. 69 at A55, and on January 23, she sent the investigative report prepared in response to Thomas's complaint against Huber, D.I. 69 at A56. On March 6, Groller issued her decision to dismiss both complaints because neither "establish[ed] a prima facie case of discrimination." D.I. 69 at A57–A59; D.I. 127-1 at 30–33. With respect to Huber's complaint against Thomas, Groller concluded that "[w]hile . . . there is evidence that supports . . . Huber's allegation that . . . Thomas created a difficult and hostile work environment for her, there is insufficient evidence to support her claim that [his] actions . . . were motivated by her gender or her membership in a protected class." D.I. 69 at A57; D.I. 127-1 at 31. Specifically, Groller found there was evidence that Thomas was "reluctant to cooperate and comply with [Huber's] directives," D.I. 69 at A57; D.I. 127-1 at 31, and that Thomas's "repeated failure to comply with [Huber's] deadlines and refusal to respond to her emails in a timely manner calls into question whether . . . Thomas was purposely uncooperative and insubordinate to [Huber]," D.I. 69 at A58; D.I. 127-1 at 32.

On December 15, 2023, Thomas filed a charge of discrimination with the Delaware Department of Labor (DDOL) alleging that Huber discriminated against and harassed him on account of his race and retaliated against him for supporting a student's discrimination complaint against her. D.I. 69 at A52–A53. DDOL issued its determination and a right-to-sue notice on March 5, 2024, D.I. 1-1 at 3, and the Equal Employment Opportunity Commission adopted DDOL's findings and issued its own right-to-sue notice on March 29, D.I. 1-1 at 1–2. Thomas initiated this action on June 27. D.I. 1. The operative Complaint alleges retaliation, hostile work environment, and discrimination on account of Thomas's race under Title VII and § 1983 against Del Tech, Huber, and Groller. D.I. 135.[2] I

---

[2] On March 9, 2026, after filing his renewed opposition to summary judgment but before Defendants filed their renewed reply, Thomas filed a Motion for Leave to File Second Amended Complaint. *See* D.I. 128. Thomas sought to add § 1983 claims against Groller in her individual capacity. D.I. 128 ¶ 2. (Thomas originally brought § 1983 claims against Groller only in her official capacity, *see* D.I. 1 at 1, and the First Amended Complaint did not purport to add claims against her in her individual capacity, *see generally* D.I. 13.). Defendants did not oppose Thomas's Motion for Leave to File Second Amended Complaint; nor did they mention it in their later-filed renewed reply in support of their motion for summary judgment. I granted Thomas's motion. *See* D.I. 133.

Thomas states that the Second Amended Complaint (SAC) is "consistent with" his renewed opposition to summary judgment and that "[n]o additional discovery or new deadlines are required." D.I. 128 ¶¶ 4–5; D.I. 128-3 at 2. Defendants have not objected to the filing of the SAC or weighed in on how it affects their pending motion for summary judgment.

I am satisfied, based on my review of the SAC, that the amendments do not change the scope of Thomas's retaliation, hostile work environment, and discrimination

dismissed Thomas's Title VII claims against Huber and Groller and § 1983 claims against Del Tech.[3] D.I. 86 at 1–2.

Defendants filed the instant motion for summary judgment on May 16, 2025, D.I. 66, and briefing was complete on June 30, 2025, *see* D.I. 77. Before the close of discovery and before Defendants filed their motion for summary judgment, however, Thomas had filed a motion for an extension of the discovery deadline, D.I. 39, which Defendants opposed, D.I. 43. I ultimately determined that good cause existed to grant Thomas the modest discovery extension he requested and reopened discovery. D.I. 99 at 4. I stayed resolution of Defendants' motion for summary judgment until discovery closed again, permitted Thomas to file a renewed opposition to Defendants' motion using any evidence acquired during discovery, and allowed Defendants to file a renewed reply. D.I. 99 at 4. The

claims against Groller. Rather, the amendments change the potential remedies available to Thomas if he prevailed on those claims. Because, for the reasons explained in this Memorandum Opinion, no reasonable jury could find for Thomas on any claim, the SAC does not moot Defendants' motion for summary judgment. Moreover, the parties have already briefed Defendants' motion twice, and neither side is unfairly prejudiced by resolution now. I will thus treat Defendants' motion as directed to the SAC and proceed based on the record and briefing before me.

[3] I also dismissed Thomas's claim for punitive damages under Title VII against Del Tech and claims for damages under § 1983 against Huber and Groller in their official capacities. D.I. 86 at 1–2.

renewed round of briefing was complete on March 31, 2026. D.I. 99 at 4; *see also* D.I. 130.

## II. LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the nonmoving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the nonmoving party's case, after which the burden of production then shifts to the nonmovant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* (internal quotation marks omitted). A nonmoving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The nonmoving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996).

## III. DISCUSSION

Thomas alleges retaliation against all Defendants in violation of Title VII and the First Amendment, pursuant to § 1983. D.I. 135 ¶¶ 11, 64–150. Thomas also alleges discrimination and a hostile work environment on account of his race against all Defendants in violation of Title VII and the Equal Protection Clause of

the Fourteenth Amendment, pursuant to § 1983.[4] D.I. 135 ¶¶ 11, 24–49, 60–63, 104–150. I will address each in turn.[5]

The *McDonnell Douglas* burden-shifting framework applies to all of Thomas's claims under Title VII and § 1983. *See Stewart v. Rutgers*, 120 F.3d 426, 432 (3d Cir. 1997) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993)) (applying the framework set forth in *McDonnell Douglas Corp. v.*

---

[4] Thomas does not explicitly invoke the Equal Protection Clause, *see generally* D.I. 135, but the Third Circuit has construed similar claims to allege violations of the Equal Protection Clause. *See Bradley v. Pitt. Bd. of Educ.*, 913 F.2d 1064, 1079 (3d Cir. 1990) ("Although [the plaintiff] does not explicitly identify in the complaint or briefs the substantive basis for his race discrimination claim under section 1983, that claim must be grounded on the equal protection clause of the Fourteenth Amendment.").

[5] I do not read the Complaint to allege discrimination or a hostile work environment on account of Thomas's sex. Indeed, Thomas does not mention any such claims in his renewed opposition.

Insofar as Thomas did allege discrimination and/or a hostile work environment on account of his sex, or his status as a black man, Defendants are entitled to summary judgment on those claims as well. Thomas failed to exhaust administrative remedies for any Title VII claims based on sex because his charge filed with DDOL makes no mention of a hostile work environment or discrimination on account of his sex. *See* D.I. 69 at A52–A53; 42 U.S.C. § 2000e-5(e)(1), (f)(1) (setting forth administrative remedies); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469–70 (3d Cir. 2001) (holding that exhaustion of administrative remedies is "an essential element for bringing a claim in court under Title VII"). Thomas also put forth no evidence whatsoever—and did not argue—that Del Tech, Huber, or Groller discriminated against him based on his sex. Moreover, any claims based on sex suffer from the same deficiencies as those based on race: Thomas failed to establish an adverse action sufficient to state a prima facie case of discrimination and severe or pervasive discrimination sufficient to state a prima facie case of a hostile work environment.

*Green*, 411 U.S. 792 (1973), a Title VII case, to § 1983 claims). Thomas "bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (italics in the original) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 506). "[If] a plaintiff establishes a *prima facie* case . . . , the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the [discriminatory or retaliatory conduct].'" *Id.* (italics in the original) (quoting *McDonnell Douglas*, 411 U.S. at 802). "If the defendant meets this burden, the presumption of discriminatory [or retaliatory] action raised by the *prima facie* case is rebutted." *Id.* (italics in the original) (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981)). "The plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext . . . , and not the real motivation for the [discriminatory or retaliatory conduct]." *Id.* (citations omitted). A defendant is entitled to summary judgment if the plaintiff fails to establish his prima facie case. *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989).

### A. Retaliation

The same standard applies to retaliation claims brought under Title VII and § 1983. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006) (Title VII); *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (§ 1983); *Hanani v. N.J. Dep't of Env't Prot.*, 205 F. App'x 71, 79–80 (3d Cir. 2006)

(applying the same test for retaliation claims under Title VII and § 1983). To establish a prima facie case of retaliation, Thomas must show that: (1) he engaged in a protected activity;[6] (2) he suffered an "adverse action by [his] employer either after or contemporaneous with [his] protected activity"; and (3) there is "a causal connection between [his] protected activity and the employer's adverse action." *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015); *see also Hanani*, 205 F. App'x at 79–80 (applying the same test for retaliation claims under Title VII and § 1983).

In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the Supreme Court held that Title VII's antiretaliation provision is broader than its antidiscrimination provisions and is not limited to "so-called ultimate employment decisions." *Id.* at 67 (internal quotation marks and citation omitted). Nonetheless, the "adverse action" must be "materially adverse," meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks and citation omitted). Temporal proximity may be "sufficient standing alone to create an inference of causality and defeat summary judgment," but in the absence of such proximity,

---

[6] Although what constitutes a protected activity may be different under Title VII and the First Amendment, neither party takes up this issue, and it does not make a difference here because Thomas failed to establish that he suffered an adverse action.

there must be some evidence of causality. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007).

Defendants argue that Thomas failed to establish all three elements of his prima facie retaliation case. D.I. 67 at 19–21. I need only address the second element. Because Thomas did not establish that he suffered a materially adverse action, I will grant Defendants' motion for summary judgment with respect to Thomas's retaliation claims.

Thomas appears to argue that he suffered three materially adverse actions: (1) Huber's complaint against him, (2) Groller's alleged failure to properly investigate his complaint against Huber, and (3) Groller's March 6 decision dismissing Huber and Thomas's complaints and stating that Thomas created a "hostile work environment" for Huber. *See* D.I. 127 at 12–16; *see also* D.I. 135 ¶¶ 84, 89, 107, 113, 115, 121. None supports a prima facie case of retaliation.

First, with respect to Huber's complaint against him, Thomas does not cite—and I am not aware of—a single case where a court held that a *defendant's* complaint of harassment *against the plaintiff* could constitute a materially adverse action. To the contrary, several courts have concluded that the internal investigation that typically follows a complaint of misconduct does *not* constitute a materially adverse action. *See, e.g.*, *Washington v. SEPTA*, 2021 WL 2649146, at *28 n.54 (E.D. Pa. June 28, 2021) ("While Plaintiff claims he suffered a

'campaign of retaliatory disciplinary actions,' to the extent he is referring to the Internal Investigations, they do not constitute adverse employment actions."); *Dodd v. SEPTA*, 2008 WL 2902618, at *14 (E.D. Pa. July 24, 2008) ("[T]he internal affairs investigation does not constitute an adverse employment action."); *Ross v. Georgetown Univ.*, 2019 WL 2452326, at *7 (D.D.C. June 12, 2019) ("[A]n investigation into an employee's conduct, without more, is not an adverse employment action that will support a Title VII retaliation or discrimination claim."); *Ginger v. District of Columbia*, 477 F. Supp. 2d 41, 53 (D.D.C. 2007) ("The mere initiation of an investigation into a plaintiff's conduct is not an adverse employment action when it has no effect on the plaintiff's employment.").

Indeed, a panel of the Third Circuit held that a defendant's investigation into an inconsistency in the plaintiff's job application "was not adverse, let alone materially adverse" because "[o]nce the discrepancy was resolved, the investigation was closed" and because "[t]here [was] no evidence in the record suggesting that the investigation caused [the plaintiff] any harm." *Tarr v. FedEx Ground*, 398 F. App'x 815, 821 (3d Cir. 2010). So too here, the investigation into Thomas (as a result of Huber's complaint against him) was closed once Groller determined there was insufficient evidence to support Huber's complaint, D.I. 69 at A57–A59; D.I. 127-1 at 30–33, and Thomas does not cite evidence of any specific harms that flowed from Huber's complaint or the ensuing investigation.

This result makes sense. The purpose of Title VII's antiretaliation provision is to ensure "unfettered access to statutory remedial mechanisms." *Burlington Northern*, 548 U.S. at 64. And Huber enjoyed the same right to file complaints of employment discrimination as Thomas did. In fact, Thomas filed his own complaint against Huber just two days after he learned of hers. *See* D.I. 69 at A31, A33–A34; D.I. 127-1 at 7–8. To conclude, then, that Huber's complaint against Thomas could give rise to liability *against Huber* would frustrate the purpose of the antiretaliation provision by discouraging individuals like Huber from filing complaints and utilizing statutory remedial mechanisms.

Second, with respect to Groller's investigation, Thomas does not cite any cases to suggest that a defendant's alleged failure to properly investigate a complaint of discrimination constitutes a materially adverse action. Rather, courts have concluded that "Defendants' alleged failure to investigate [the plaintiff's] various [harassment] complaints, . . . do[es] not constitute [a] materially adverse employment action[]." *See, e.g.*, *Vasquez v. Yonkers Pub. Sch. Dist.*, 2024 WL 1349227, at *7 (S.D.N.Y. Mar. 29, 2024), *aff'd*, 2025 WL 893368 (2d Cir. Mar. 24, 2025); *cf. Fields v. Am. Airlines, Inc.*, 696 F. Supp. 3d 66, 97 (E.D. Pa. 2023) ("[F]ailure to investigate a claim of discrimination is not an adverse employment action that can give rise to a claim for disparate treatment."), *aff'd*, 2024 WL 3534478 (3d Cir. July 25, 2024). Indeed, the Second Circuit affirmed the district

court's decision in *Vasquez* even where "the record could admit a finding of some neglect" in the investigation. *Vasquez v. Yonkers Pub. Sch. Dist.*, 2025 WL 893368, at *2 (2d Cir. Mar. 24, 2025) (summary order).

Moreover, the record evidence shows that Groller handled the investigation into Thomas's complaint against Huber in the same or a similar manner as she handled the investigation into Huber's complaint against Thomas: The investigations spanned similar amounts of time, and both complaints were ultimately dismissed (on the same day) for insufficient evidence. D.I. 69 at A57–A59; D.I. 127-1 at 30–33; *compare* D.I. 69 at A30 (Huber complaint filed on September 21, 2023) *with* D.I. 69 at A55 (Huber investigation report sent on January 4, 2024) *and* D.I. 69 at A34–A35 (Thomas complaint filed on October 5, 2023) *with* D.I. 69 at A56 (Thomas investigation report sent on January 23, 2024).

Third and finally, Groller's March 6 decision addressing Huber and Thomas's complaints is not a materially adverse action either. Although Thomas disagrees with some of Groller's characterizations of him in her decision, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *See Burlington Northern*, 548 U.S. at 68; *see also Tarr*, 398 F. App'x at 821 (holding that an investigation into the plaintiff was not an adverse action where there was no evidence that the

investigation harmed the plaintiff). And there is no evidence that, for example, Groller's decision was widely disseminated, posted publicly, or relied on by a supervisor as a basis to discipline, demote, or fire Thomas. In other words, there is no evidence of any harm, let alone material harm, that has flowed from Groller's decision.

Accordingly, I will grant Defendants' motion insofar as it seeks entry of summary judgment on Thomas's retaliation claims against Huber, Groller, and Del Tech because Thomas failed to establish a prima facie case of retaliation.

### B. Hostile Work Environment

The same standard applies to hostile work environment claims under Title VII and § 1983. *Hanani*, 205 F. App'x at 79; *Bangura v. Pennsylvania*, 793 F. App'x 142, 145–46 (3d Cir. 2019) (per curiam). To establish a prima facie case of a hostile work environment, Thomas must show that: (1) he suffered intentional discrimination; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person in similar circumstances; and (5) respondeat superior liability. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

To determine whether discrimination is sufficiently severe or pervasive, courts consider the totality of the circumstances, including "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). It is a high bar. *Sousa v. Amazon.Com, Inc.*, 2022 WL 4548910, at *2 (D. Del. Sept. 29, 2022). The conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment," *Harris*, 510 U.S. at 21, and "alter the conditions of [the plaintiff's] employment," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment[.]" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Defendants argue that Thomas failed to establish that he suffered intentional discrimination, that the alleged discrimination was severe or pervasive, and that a reasonable person in like circumstances would be detrimentally affected. D.I. 67 at 16. I need only address the second argument.

A reasonable jury could not find that the conduct Thomas complains of was severe or pervasive. Thomas testified that Huber excluded him from meetings, D.I. 69 at A77, implied to substitute teachers that he did not perform his job well, D.I. 69 at A78, disparaged him to others, D.I. 69 at A83, gave him "arbitrar[y]" deadlines, D.I. 69 at A86, and "no longer greeted [him] in the same manner that she used to," D.I. 69 at A82. This evidence, viewed in the light most favorable to

Thomas, certainly shows that Huber and Thomas's relationship is strained, but Title VII is not a "general civility code." *See Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Huber's conduct was not "extreme" and thus did not "alter the conditions of [his] employment and create an abusive working environment." *See id.* at 786, 788. Thomas also argues that Groller's characterization of him in her March 6 decision—that he created a "difficult and hostile work environment for [Huber]"—was "stigmatizing." D.I. 127 at 6 (citing D.I. 127-1 at 31). But Groller's conduct, too, resembles a "mere offensive utterance," not objectively abusive or extreme conduct. *See Harris*, 510 U.S. at 23.

Neither Huber nor Groller's conduct was physically threatening or humiliating. Nor is there evidence that it interfered with Thomas's performance as an instructor. In fact, Thomas has never received a negative performance review. D.I. 69 at A73. Further, the conduct Thomas complains of bears no resemblance to the kinds of conduct the Third Circuit has found sufficient to survive summary judgment. *See, e.g.*, *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 214–15 (3d Cir. 2017) (sexual text messages, offensive touching, and unwanted sex acts); *Cardenas v. Massey*, 269 F.3d 251, 258, 263 (3d Cir. 2001) (repeated oral and written ethnic slurs).

Accordingly, I will grant Defendants' motion for summary judgment with respect to the hostile work environment claims against Huber, Groller, and Del Tech because Thomas failed to establish a prima facie case of a hostile work environment.

### C. Race Discrimination

The same standard applies to discrimination claims brought under Title VII and § 1983. *See Stewart*, 120 F.3d at 432. To establish a prima facie case of discrimination, Thomas must show that: (1) he is a member of a protected class; (2) he was qualified for the position held; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of intentional discrimination. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

Defendants argue that Thomas failed to establish that he suffered an adverse employment action or that there were circumstances giving rise to an inference of intentional discrimination. D.I. 67 at 13. I need only address the former.

Title VII only provides a remedy for discrimination that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004). "Termination, failure to promote, and failure to hire all constitute adverse job actions. Similarly, actions that reduce opportunities for promotion or

professional growth can constitute adverse employment actions." *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 219 (3d Cir. 2014) (citations omitted). "[L]ateral transfers and changes of title or reporting relationships have generally been held *not* to constitute adverse employment actions." *Id.* (emphasis added) (collecting cases).

In his renewed opposition to summary judgment, Thomas appears to argue that he suffered an adverse employment action when Groller included "negative characterizations" of him in her March 6 decision dismissing Thomas and Huber's complaints against one another. *See* D.I. 127 at 6, 17. For the reasons described above, Groller's March 6 decision fails to meet the broader definition of "adverse action" in Title VII's antiretaliation provision, let alone the narrower definition for discrimination claims. *See Burlington Northern*, 548 U.S. at 67 (construing "adverse action" to be broader in the context of retaliation claims than in discrimination claims). The March 6 decision bears no resemblance to the kinds of employer actions that courts have found to be adverse actions. *See Walker*, 558 F. App'x at 219. (Nor do arbitrary deadlines, exclusion from meetings, cold greetings, or disparaging remarks, for that matter.)

Insofar as Thomas alleged and intended to argue that his voluntary transfer to Stanton's Social Sciences Department was an adverse action, *see* D.I. 135 ¶¶ 31, 39, 45, 48, 69, he failed to establish a prima facie case of discrimination under that

theory as well. The Third Circuit has not recognized "constructive transfer" as an adverse action sufficient to give rise to an employment discrimination claim. Nor has any other circuit court as far as I am aware. *Cf. Brown v. Potter*, 516 F. App'x 563, 565 (6th Cir. 2013) (declining to find an adverse action where the plaintiff transferred voluntarily and "[h]er new position . . . was substantially the same as her old one, offering the same duties, pay and benefits and differing only in the grade level at which [her employer] ranked it"); *Akins v. Fulton Cnty., Ga.*, 420 F.3d 1293, 1303 (11th Cir. 2005) ("We make no judgment as to the wisdom of recognizing the concept of constructive transfer as an adverse employment action. We do not hold that such a cause of action exists, or that it is categorically unactionable."); *Kirkland v. Off. of the Mental Health of the State of N.Y., Buffalo Psychiatric Ctr.*, 2016 WL 7974151, at *17 (W.D.N.Y. Nov. 15, 2016) ("A claim [of] constructive transfer has yet to be recognized by the Second Circuit as a materially adverse employment action for purposes of Title VII[.]").

The Eleventh Circuit, however, has explained that *if* it were to recognize constructive transfer, a plaintiff would need to show that "work conditions [had] become so intolerable that [he] ask[ed] to be transferred to a less desirable position with a lower salary, loss of benefits, or with fewer opportunities for salary increases." *Akins*, 420 F.3d at 1301. The factors courts consider for a constructive *discharge* would thus be instructive. *See Goss v. Exxon Off. Sys. Co.*, 747 F.2d

885, 888 (3d Cir. 1984) (explaining that "conditions of discrimination in employment [must be] so intolerable that a reasonable person subject to them would resign" to constitute constructive discharge). The Third Circuit has recognized several factors relevant to constructive discharge: whether the plaintiff was threatened with discharge, encouraged to resign, demoted, suffered a reduction in pay or benefits, involuntarily transferred to a less desirable position, experienced a change in job responsibilities, or received poor job evaluations. *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993); *see also Lebofsky v. City of Philadelphia*, 394 F. App'x 935, 939–40 (3d Cir. 2010) (applying the factors from *Clowes*). Moreover, a panel of the Third Circuit has held that "[t]he degree of harassment necessary to prove constructive discharge is greater than the minimum needed to prove a hostile work environment." *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 117–18 (3d Cir. 2017) (citing *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006)).

Because no reasonable jury could find that the conditions of Thomas's employment had become "so intolerable that a reasonable person subject to them would [transfer]," *see Goss*, 747 F.2d at 888, I need not address whether constructive transfer is cognizable under Title VII and § 1983. There is no evidence that Huber (or anyone for that matter) threatened to transfer Thomas, encouraged him to transfer, or gave Thomas poor job evaluations. To the contrary,

Thomas testified that Huber never told him that she wanted him to quit or transfer and that he has never received a poor performance evaluation while at Del Tech. D.I. 69 at A73, A91. Nor is there any evidence that Thomas receives a lower salary, has less benefits, or has less opportunities for promotion in his current role in the Social Sciences Department. Indeed, Thomas testified that there has been no change in his compensation. D.I. 69 at A72. Moreover, for the reasons described above, "[b]ecause the conduct alleged is not sufficiently severe or pervasive to constitute a hostile work environment claim, it also falls short of a constructive [transfer] claim." *See Jennings-Fowler*, 680 F. App'x at 118. Accordingly, Thomas did not establish a prima facie case of discrimination under this theory either.

The absence of an adverse action is thus fatal to Thomas's race discrimination claims as well. Accordingly, I will grant Defendants' motion insofar as it seeks entry of summary judgment on Thomas's race discrimination claims against Huber, Groller, and Del Tech because Thomas failed to establish a prima facie case of race discrimination.

* * * *

For the foregoing reasons, I will grant Defendants' motion for summary judgment.

The Court will issue an Order consistent with this Memorandum Opinion.